## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN R. DELP<br>1470 Trisha Lane<br>Harleysville, PA 19438 | CIVIL ACTION |
| Plaintiff, | |
| | NO. |
| v. | |
| UNIVEST INSURANCE, INC.<br>14 North Main Street<br>P. O. Box 64197<br>Souderton, PA 18964 | JURY TRIAL DEMANDED |
| and | |
| UNIVEST CORPORATION OF<br>PENNSYLVANIA<br>14 North Main Street<br>P. O. Box 64197<br>Souderton, PA 18964 | |
| and | |
| RONALD R. FLAHERTY<br>c/o Univest Insurance, Inc.<br>14 North Main Street<br>P. O. Box 64197<br>Souderton, PA 18964 | |
| Defendants. | |

## COMPLAINT

### I.    INTRODUCTION

1.    Plaintiff, Karen R. Delp (**"Delp"** or **"Plaintiff"**) brings this action against her

former employers Univest Insurance, Inc. (**"Univest Insurance"**), its parent corporation Univest

Corporation of Pennsylvania (**"Univest Corporation"**) and Univest Insurance President Ronald

R. Flaherty pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. (**"Title VII"**), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq. (**"PHRA"**), the Equal Pay Act 29 U.S.C. § 206(d) (**"EPA"**) and for Univest's tortious interference with Delp's contractual relations in retaliation for Delp exercising her federally protected right not to be discriminated against based upon her gender.  While she was employed by Univest Insurance, Delp was discriminated against, harassed and subjected to a hostile and abusive working environment because she was female.  In addition, Delp was retaliated against and constructively discharged for complaining about and opposing her employer's discriminatory acts and practices, and the retaliation continues even though Delp has not been employed by Univest for more than two years.  Delp seeks damages including back pay, front pay, compensatory, liquidated and punitive damages and all other relief this Court deems appropriate.


## II.    **PARTIES**

2.      Plaintiff Delp is an adult female and citizen of the Commonwealth of Pennsylvania.

3.      Defendant Univest Insurance is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 14 North Main Street, P. O. Box 64197, Souderton, PA 18964.

4.      Defendant Univest Corporation is the parent company of Univest Insurance and is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 14 North Main Street, P. O. Box 64197, Souderton, PA 18964.

{00668132;v3 }

5.      Defendant Ronald R. Flaherty is the President of Univest Insurance employed at 14 North Main Street, P. O. Box 64197, Souderton, PA 18964.

6.      At all relevant times, Defendants were the "employers" of Delp, as defined by Title VII and the PHRA.

7.      At all relevant times, Delp was an "employee" of Defendants as defined by Title VII and the PHRA.

## III.     JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action and, in particular, Delp's claims arising under Title VII, pursuant to 42 U.S.C. § 2000e-(5)(f)(3) and 28 U.S.C. § 1331.

9.      This Court has supplemental jurisdiction over Delp's claims arising under the PHRA pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) in that some or all of the Defendants reside in this district, and all of the events and occurrences giving rise to Delp's claims occurred in this district.

11.     Venue is also proper in this judicial district pursuant to 42 U.S.C. § 2003(e)-(5)(f)(3) because the unlawful employment practices were committed in this district.

## IV.     JURY DEMAND

12.     Delp requests a jury trial on all causes of action.

{00668132;v3 }

## V.   DELP'S COMPLIANCE WITH ADMINISTRATIVE REQUIREMENTS

13.   In or about November, 2012, Delp filed a timely Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("**EEOC**") in which Delp complained of acts and practices of discrimination and retaliation.[1]

14.   Delp's Complaint was cross-filed with the Pennsylvania Human Relations Commission.

15.   On or about July 9, 2014, the EEOC issued Delp a Notice of Right to Sue, informing her that the EEOC was terminating the processing of her Charge of Discrimination because more than 180 days had passed since the filing of the Charge, and that she had the right to file this lawsuit within 90 days of her receipt of the Notice.[2]

16.   Delp has fully and timely complied with all administrative prerequisites and requirements for the filing of this action under Title VII and the PHRA.


## VI.   FACTUAL BACKGROUND

17.   Delp's employment with Defendants began in or about September 2006.

18.   Delp was hired by Defendants as a Property and Casualty Producer to sell commercial and other insurance to the public.

19.   On or about September 25, 2006, Theresa Schwartzer, Defendants' Vice President of Human Resources, presented an employment agreement to Delp that provided a $75,000 per year base salary, payable bi-weekly.

---

[1] A true and correct copy of Delp's Charge of Discrimination is attached as **Exhibit "A."**
[2] A true and correct copy of the Notice of Right to Sue issued to Delp by the EEOC is attached as **Exhibit "B."**

{00668132;v3 }

20.     Delp signed the employment agreement that was presented to her, however, when Delp received a fully-executed copy of the employment agreement, Schedules A & B showing her compensation (including the salary) had been unilaterally altered by Defendants to remove the guaranteed salary and make her compensation commission-based.

21.     At the time of her constructive discharge, Delp was the only female Property and Casualty Producer employed by Defendants and the only Producer hired since 2005 who did not receive a two-year salary package.

22.     From 2006 through her constructive discharge on September 4, 2012, Delp addressed this issue numerous times via written and oral communications with Defendants' management.

23.     Throughout the course of her employment with Defendants, Delp performed her job responsibilities in a highly competent, professional manner.

## VII.   ACTS AND PRACTICES OF GENDER DISCRIMINATION, SEXUAL HARASSMENT AND RETALIATION TO WHICH DELP WAS SUBJECTED BY DEFENDANTS

24.     Since the outset of her employment in 2006, and continuing until her constructive discharge in September, 2012, Defendants subjected Delp to acts of sexual harassment, discrimination on the basis of sex, and a hostile and abusive work environment based upon sex.

25.     Notwithstanding a façade of gender neutrality, Defendants' pervasive hostility toward Delp based upon her gender continued from the inception of Delp's employment in 2006 through her constructive discharge in 2012.

26.     On numerous occasions during her employment Delp turned to Defendants' management to assist in remedying the pervasive discrimination she was suffering, however she

{00668132;v3 }

was afforded no relief because Defendants' management was both engaging in and encouraging the gender discrimination Delp was suffering.

27.     Defendants' discriminatory, retaliatory and sexual-harassing acts, statements and conduct that were directed toward and/or affected Delp included the following:

(a)     Continually refusing to compensate Delp in accordance with and as favorably as similarly-situated males.

(b)     Refusing to provide Delp with a two-year salary package which was offered to all other similarly-situated males.

(c)     Paying similarly-situated males a more favorable salary and commission than Delp.

(d)     Requiring Delp to stay in the office and conduct "phone blitzes" to potential clients while similarly-situated males were permitted to golf, although their calendars showed them at "appointments."

(e)     Refusing to provide Delp with documents related to the calculation of her compensation including "draw versus commission reports" that were regularly provided to similarly-situated males.

(f)     Subjecting Delp to verbal abuse that was not directed at similarly-situated males.

(g)     Defendants permitted the males in the office to watch pornography in the lunchroom while Delp and other female employees were present.

(h)     Female employees, including Delp, were subjected to crude sexual jokes and gestures made by the males that were permitted by Defendants to watch porn in the lunchroom.

{00668132;v3 }

(i)     Defendants' management including President Flaherty and Senior Vice President William Erickson during golf outings, insurance carrier outings and company-sanctioned happy hours were routinely accompanied by the same two single 25-year old female employees while Delp was excluded from such functions.

(j)     In December, 2011, during the company's Christmas Party, a male co-worker of Delp, Jason Ryan, donned red velvet pants stuffed with a "mock penis" and shook it in the faces of his seated female elderly co-workers, as well as Delp.

(k)     When Delp complained about the shaking of the "mock penis" at Delp and her female co-workers, Delp and the other females were told by Defendants' President Ronald Flaherty and Controller Christy Lightfoot that the shaking of the mock penis in the women's faces was "part of the holiday fun."

(l)     At a happy hour attended by Defendants' employees, two of Defendants' managers offered a $20 bill to a female employee in her mid-twenties if she would drop her pants and show them her tattoo.

(m)     When Delp complained to management regarding her failure to be compensated in accordance with her similarly-situated male peers, she was told by the President Ronald Flaherty that "any reasonable person would have quit by now, but she [Delp] just won't quit."

(n)     In direct retaliation for her complaints regarding being paid less than her similarly-situated male peers, Delp was told by Defendants' management that she could be terminated for "failure to meet her sales targets," although this was false and Delp was in fact meeting her sales targets.

{00668132;v3 }

(o)     In direct retaliation for her complaints regarding being paid less than similarly-situated male peers, Delp was held to standards by Defendants' management to which similarly-situated male peers were not held.

(p)     In direct retaliation for her complaints regarding being paid less than her similarly-situated male peers, Delp was placed on probation status as of February 25, 2011. Although the probation was initially to last until May 1, 2011, Defendants extended the probation on May 31, 2011 to August 31, 2011 despite Delp's stellar sales results and the fact that she was "producer of the month" in April, 2011.

(q)     On September 4, 2012, Delp was constructively discharged.

28.     Following Delp's constructive discharge, she continued to work in the insurance industry while abiding by the terms of the two-year non-solicitation provision contained in the Employee Confidentiality and Non-Solicitation Agreement she executed in conjunction with her employment with Univest.

29.     The two-year term of the non-solicitation provision expired on September 4, 2014.

30.     As part of her insurance practice, Delp places significant business with Harleysville Insurance and Selective Insurance companies.

31.     Following the expiration of the two-year term of the non-solicitation provision, Delp was contacted by Harleysville Insurance and Selective Insurance regarding entering into a contractual relationship with Delp whereby Delp would receive an appointment to sell their insurance products directly, as opposed to having to place the sales of their insurance products through an insurance broker.

{00668132;v3 }

32.     A contract to sell Harleysville Insurance and Selective Insurance products directly would result in Delp receiving higher commissions on those sales and making significantly more income.

33.     However, Delp was informed by both Harleysville Insurance and Selective Insurance that, as a direct result of communications that each company received from Univest President Flaherty, they were unable to enter into the contractual relationship with Delp.

34.     Both Harleysville Insurance and Selective Insurance informed Delp that Univest President Flaherty contacted them and threatened to divert business away from each of them and to other insurance companies if they enter into a contractual relationship with Delp that permits her to sell their insurance products directly.

35.     Both Harleysville Insurance and Selective Insurance informed Delp that, as direct a result of Univest President Flaherty's threats which could have a significant financial impact upon them, they could not enter into a contractual relationship with Delp that permits her to sell their insurance products directly.

36.     Univest President Flaherty's interference with Delp's prospective contractual relations with Harleysville Insurance and Selective Insurance was without justification or privilege, but to the contrary was made solely in retaliation for Delp's exercise of her federally protected rights not to be discriminated against based upon her gender.

37.     Delp's gender was a motivating and/or determinative factor in Defendants' discriminatory treatment of Delp, including the hostile work environment to which she was subjected and her constructive discharge.

38.     Delp's complaining of discrimination was a motivating and determinative factor in Defendants' retaliatory treatment of Delp, including the hostile work environment to which

9

she was subjected, her constructive discharge and the tortious interference with her prospective contractual relations with Harleysville Insurance and Selective Insurance.

39.     Defendants failed to prevent or address the discriminatory and retaliatory conduct to which Delp was subjected and further failed to take corrective and remedial measures to make the workplace free of harassing, discriminatory and retaliatory conduct.

40.     The retaliatory actions taken against Delp after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

41.     The discriminatory conduct of Defendants was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered, that a hostile work environment existed, and made Delp believe that the conditions of employment had in fact been altered and that a hostile work environment existed.

42.     As a direct and proximate result of Defendants' discriminatory and retaliatory acts and practices, Delp has suffered and will suffer a loss of earnings, diminution of earning capacity, loss of employee benefits, pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life, the full extent of which is not known at this time.

43.     Defendants' discriminatory and retaliatory conduct was sufficiently outrageous and egregious to warrant an award of punitive damages.

## COUNT I – TITLE VII
## DELP v. UNIVEST INSURANCE, INC. AND
## UNIVEST CORPORATION OF PENNSYLVANIA

44.     Delp incorporates each preceding paragraph as if set forth at length herein.

45.     The acts, conduct and statements of Defendants as set forth herein caused Delp to suffer discrimination on the basis of her gender in violation of Title VII.

46.     The acts, conduct and statements of Defendants as alleged herein caused Delp to be subjected to sexual harassment in violation of Title VII.

47.     The acts, conduct and statements of Defendants as alleged herein caused Delp to be subjected to a hostile and abusive work environment in violation of Title VII.

48.     The acts, conduct and statements of Defendants as alleged herein caused Delp to be retaliated against in violation of Title VII.

49.     Delp was constructively discharged because of her gender and in retaliation for her opposition to Defendants' discriminatory acts and practices; and the constructive discharge was therefore in further violation of Title VII.

50.     Defendants' violations of Title VII were intentional, malicious and were committed with reckless indifference to Delp's rights, thereby entitling Delp to an award of punitive damages.

51.     As a direct and proximate result of Defendants' violations of Title VII, Delp has suffered and will suffer those damages and losses set forth herein and has incurred attorneys' fees and costs.

52.     As a direct and proximate result of Defendants' violations of Title VII, Delp has suffered and will suffer irreparable harm, as a result of which Delp is entitled to equitable and/or injunctive relief.

## COUNT II – PHRA
### DELP v. UNIVEST INSURANCE, INC. AND
### UNIVEST CORPORATION OF PENNSYLVANIA

53.     Delp incorporates each preceding paragraph as if set forth at length herein.

11

54.     The acts, conduct and statements of Defendants set forth herein caused Delp to suffer discrimination on the basis of her gender in violation of the PHRA.

55.     The acts, conduct and statements of Defendants as set forth herein caused Delp to be subjected to sexual harassment in violation of the PHRA.

56.     The acts, conduct and statements of Defendants as set forth herein caused Delp to be subjected to a hostile and abusive work environment in violation of the PHRA.

57.     The acts, conduct and statements of Defendants as set forth herein caused Delp to be retaliated against in violation of the PHRA.

58.     Delp was constructively discharged as a result of her sex and in retaliation for her opposition to Defendants' discriminatory acts and practices; and her constructive discharge was therefore in further violation of the PHRA.

59.     As a direct and proximate result of Defendants' violations of the PHRA, Delp has suffered and will suffer damages and losses set forth herein and has incurred attorneys' fees and costs.

60.     As a direct and proximate result of Defendants' violations of the PHRA, Delp has suffered and will suffer irreparable harm, as a result of which Delp is entitled to equitable and/or injunctive relief.

### COUNT III – EQUAL PAY ACT
### DELP v. UNIVEST INSURANCE, INC. AND
### UNIVEST CORPORATION OF PENNSYLVANIA

61.     Delp incorporates each preceding paragraph as if set forth at length herein.

62.     The acts, conduct and statements of Defendants set forth herein caused Delp to suffer discrimination on the basis of her gender in violation of the EPA.

{00668132;v3 }

63.     As a direct and proximate result of Defendants' willful violations of the EPA, Delp has suffered and will suffer damages and losses set forth herein and has incurred attorneys' fees and costs.

64.     As a direct and proximate result of Defendants' violations of the EPA, Delp has suffered and will suffer irreparable harm, as a result of which Delp is entitled to equitable and/or injunctive relief.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**
**DELP v. UNIVEST INSURANCE, INC., UNIVEST CORPORATION OF**
**PENNSYLVANIA AND RONALD R. FLAHERTY**

65.     Delp incorporates each preceding paragraph as if set forth at length herein.

66.     The acts, conduct and statements of Defendants set forth herein constitute a tortious interference with Delp's prospective contractual relations with Harleysville Insurance and Selective Insurance.

67.     The tortious actions were taken without justification or privilege, but to the contrary were taken solely to harm Delp in retaliation for Delp's exercise of her federally protected rights not to be discriminated against based upon her gender.

68.     As a proximate result of Univest President Flaherty's tortious interference with Delp's prospective contractual relations with Harleysville Insurance and Selective Insurance, Delp has suffered significant financial harm.

69.     The actions taken by Univest President Flaherty were within the scope of his employment, which binds Univest Insurance and Univest Corporation for the tortious conduct and retaliation against Delp.

{00668132;v3 }

70.     Alternatively, the actions taken by Univest President Flaherty were outside of the scope of his employment, which makes him individually liable for his tortious conduct and retaliation against Delp.

71.     Defendants' outrageous and egregious actions warrant an award of punitive damages to punish Defendants' for their wrongful conduct.

## RELIEF SOUGHT BY DELP

WHEREFORE, Plaintiff, Karen R. Delp, respectfully requests this Court grant the following relief to remedy Defendants' violations of Title VII, the PHRA and the EPA:

(a)     declaring the acts and practices of Defendants complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices of Defendants complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations by Defendants of Title VII, and the violations of Defendants of the PHRA;

(d)     awarding economic compensatory damages to Delp under Title VII and the PHRA to make Delp whole, in the form of back pay, front or prospective pay, past and future lost earnings and/or diminution of earning capacity, and the value of past and future lost employee benefits;

(e)     awarding non-economic compensatory damages to Delp under Title VII and the PHRA for past and future pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life.

(f)     awarding punitive damages to Delp under Title VII;

{00668132;v3 }

(g)      liquidated damages in an amount equal to the back pay award under the EPA;

(h)      awarding such other damages to Delp as are appropriate and recoverable under Title VII and the PHRA;

(i)      awarding damages suffered by Delp as a result of Defendants' tortious interference with her prospective contractual relations, including compensatory and punitive damages;

(j)      awarding pre-judgment interest to Delp;

(k)      awarding Delp reasonable attorneys' fees, costs of suit and expert fees; and

(l)      granting such other further relief to Delp as the Court may deem just, proper and equitable.

SEMANOFF ORMSBY
GREENBERG & TORCHIA, LLC

BY:_____
MICHAEL J. TORCHIA, ESQUIRE
STEPHEN C. GOLDBLUM, ESQUIRE
2617 Huntingdon Pike
Huntingdon Valley, PA  19006
(215) 887-0200

Attorneys for Plaintiff Karen Delp

{00668132;v3 }